## WILLIAMSON ET AL V. MCCRARY AD.

NON-CLAIM: *Statute of did not run during the war.*
  The statute of non-claim has all the attributes and characteristics of a statute of limitations and did not run during the war.

APPEAL from *Sevier* Circuit Court.
Hon. L. J. JOYNER, Circuit Judge.
*Compton*, for appellant.
*Gallagher & Newton* and *Rose, contra*.

EAKIN, J.:

It appears from the record in this case, which incorporated an agreed statement of facts, used in the court below upon trial, that on the 5th day of January, 1861, Benj. E. Williamson with others, executed a note under seal, whereby he bound himself, on or before the first day of April next thereafter, to pay George and M. E. Williamson, guardians, etc., $6,961.23. He died on the 21st day of February, 1863, and on the 3d day of April, 1863, the Probate Court of Sevier county granted letters of administration upon his estate to J. D. Bellah and Eliza Williamson. The payees of the note were at the time of its execution, and have since continued to be, residents of the State of North Carolina, which was in and a component part of the Confederate States during the war. During the year 1863, and on to the close of the war, the Mississippi river was blockaded by the United States forces; but citizens of the Confederate States did actually pass and repass frequently.

On the 7th day of June, 1866, the defendant, McCrary, was by said Probate Court duly appointed administrator *de bonis non* of said estate; and on the 5th day of July, 1867, this claim, duly verified, was presented to him for payment, and by him disallowed. It had never been presented earlier to either

administrator. Upon application to the Probate Court it was allowed, and McCrary appealed to the Circuit Court.

The principal defence, and the only one necessary to notice, was the statutory bar of non-claim. At the February term, 1877, the cause was submitted to the court, sitting as a jury, which found that the claim was barred by the statute, and disallowed the same, with costs; declaring the law to be, that the statute of non-claim is not a statute of limitation, and was not suspended by the war. The court, further, refused to declare that the residence of the claimant in North Carolina, and the blockade of the Mississippi, affected the operation of the statute between citizens of that State and of this. The claimant appealed.

Soon after the close of the civil war it was held by this court in the case of *Hawkins* v. *Filkins*, (24 Ark., 286) that the government of the State had continued to exist *de jure* during the war, until changed by the convention of 1864 ; and that all its acts up to that period, not in conflict with the constitution and laws of the United States, had been valid and binding. It was further held in the case of *Bennett, ad. etc.*, v. *Worthington*, (Ib. 487) that as between citizens of the Confederate States the statute of limitations had not been suspended by the war, although in the county of the defendant the courts had been practically closed.

In the Federal courts, however, it was held, repeatedly, that as between citizens of different belligerent powers the statutes of limitation were suspended. This, upon principles of international law, independent of any exceptions in the respective statutes of either State. It is not an exception created by the courts. It is the consequence of an imperative mandate of the law of nations; by which, during the war, all commercial intercourse and correspondence between enemies is interdicted. *Brown* v. *Hicks*, 15 Wallace, 182. The matter, however, did

not rest wholly upon general principles of international law. By Act of 11th June, 1864, Congress provided that when any defendant could not be served with process, by reason of resistance to the execution of the laws of the United States, or the interruption of the ordinary course of legal proceedings, the time of such interruption should not be estimated in the time limited by law for the commencement of the action ; and it was declared in *Ross* v. *Jones*, 22 Wallace, 22, without reference to citizenship, to be the established rule of the Federal courts "that the statute of limitation was suspended in the rebellious States during the existence of the late rebellion."

Afterwards, upon the adoption of the Constitution of 1868, and a change of the members of this court, different views prevailed as to the effect of the attempted secession. It was considered that no legal government existed in this State at all after the act of secession ; and that all acts of *soi disant* Legislature or courts sitting here were void. That in fact no courts were in existence. And in this view this court adopted in their full scope the principle declared by the Federal Courts, holding that as "*flagrante bello*," there were neither courts nor government here, the statutes of limitation became suspended also, even as betwen citizens, from the 6th of May 1861, to the 2d of Apri,l I866. The legitimacy of this conclusion it is bootless now to discuss. From that time it became a rule of property affecting the dealings of citizens, with regard to a large amount of choses in action then outstanding, and not barred. *Hall* v. *Denckla*, 28 Ark., 506.

Another change occurred in our government. This court was reorganized under the Constitution of 1874, and the former views announced in *Hawkins* v. *Filkins* came again in vogue. It might have followed from the principles announced in *Bennett, admr.* v. *Worthington (supra)*, that the statutes of limitations between citizens had continued to run during the

war, (except as controlled by action of the State Legislature previous to the Constitution of 1864). The question arose in the case of *Mayo & Jones* v. *Cartwright et als.*, 30 Ark., 407. The court, without approving the grounds upon which the doctrine of *Hall* v. *Denckla* was based, considered that the conclusion as to the running of the statute had been so long acquiesced in that it would be a matter of questionable propriety to disturb it. Upon the doctrine of *stare decisis* it declined to do so, but declined also to make any extension of its application. It held that it would not be used as a defense by a trustee for sale, who had neglected to take possession and sell before the title of the occupant of the land had ripened by adverse possession of seven years. The court considered that as no suit or action in court on the part of the trustee was necessary, but he might have proceeded *in pais*, he was not entitled to claim a suspension of the statute against suit in equity, by the occupant who had been more than seven years in possession.

The question now presented is, whether the statute of nonclaim is to stand upon the same rule with regard to suspension as the general statute limiting the time for actions.

Gantt's Digest, chap. 4, sec. 99, provides that "all demands not exhibited to the executor or administrator, as required by this act, before the end of two years from the granting of the letters, shall be forever barred." This is in express terms a statute of limitations, applicable alone to claims against estates, prescribing the time in which they must be brought to the notice of the personal representative by exhibition. The *mode* of exhibition may be by revivor of a pending action (sec. 100) or the beginning of a new action against the representative (sec. 101), or by delivery of a copy of the instrument or account upon which the claim is founded. These limitations supersede and take the place of the general statute of limitations, but that is only the change from one system of limitations

regulating suits *inter vivos*, to another governing proceedings against estates.

The first two modes of exhibition are by proceedings in court, and are without question *actions*, as distinct from proceedings *in pais*.

The last has no efficacy in itself, except as a foundation and preliminary step to proceedings in the Probate Court, either to obtain the judgment of the court upon the validity of the claim, or (if that is not controverted), to obtain an order for its payment, for the administrator or executor is not authorized to pay the account upon his own allowance. He may do so, but it is at his peril. He should report his action to the court and await its order. If the claim be disallowed, he need do nothing more, and it devolves upon the claimant to follow the presentation with notice of application to the Probate Court, when the matter becomes a suit between parties as effectually as if presented in the Circuit Court by either of the other prescribed modes.

The presentation then must be considered as incidental and preliminary to a judicial proceeding, to establish the claim or direct its payment if not litigated. It is an Act *in pais*, but done only as a pre-requisite to a suit—not as an act by which alone the object may be effected. It partakes of the nature of the judicial proceeding in the Probate Court, to which it is incident. It differs essentially from a sale under a power, which may be entirely accomplished without the aid or intervention of any court whatever.

We think the statute of non-claim has all the attributes and characteristics of a statute of limitations, and that the statute did not run from the 6th day of May, 1861, as held in *Hall* v. *Denckla,* and in other cases since.

The court below erred in declaring the law otherwise.

Let the judgment be reversed and the cause remanded, with instructions to allow and class the claim ; and for other proceedings in accordance with law, and consistent with this opinion.